Gordon C. REID, Plaintiff, Appellant,

v.

**STATE OF NEW HAMPSHIRE,**
**et al., Defendants, Appellees.**

No. 93–1579.

United States Court of Appeals,
First Circuit.

Submitted Aug. 31, 1993.

Decided June 6, 1995.

Gordon C. Reid on brief pro se.

Robert G. Whaland, William A. Grimes and McDonough & O'Shaughnessy, Manchester, NH, on brief, for appellee.

Carolyn M. Kirby, Asst. County Atty., Manchester, NH, on Motion for Summary Affirmance for appellee.

Before SELYA, CYR and BOUDIN, Circuit Judges.

CYR, Circuit Judge.

After a New Hampshire court set aside his convictions on two charges of felonious sexual assault against a child, *pro se* plaintiff Gordon C. Reid initiated this civil rights action for compensatory and punitive damages against, *inter alia*, Hillsborough County prosecutors Marguerite Wageling and Paul McDonough, Manchester police officers Gary Simmons, Ronald Paul, James Ahern and Richard Gilman, and defense attorney Richard Renfro. The district court dismissed all claims, and Reid appealed.

For the reasons hereinafter discussed, we affirm the district court order dismissing the claims against prosecutors Wageling and McDonough, as well as the claim that Renfro conspired with the prosecutors to conceal exculpatory evidence from Reid. We vacate the order dismissing the false arrest and malicious prosecution claims against the police defendants and the due process claim alleging that the police defendants intentionally concealed exculpatory impeachment evidence from the prosecutors.

## I

### BACKGROUND

#### A. *The State Court Proceedings*

Reid was arrested, without a warrant, on June 21, 1986, and charged with three counts

of felonious sexual assault upon a six-year-old girl, Misty ____ ("Misty").[1] He was incarcerated immediately upon arrest. Manchester Police Sergeant Gary Simmons testified at the probable cause hearing ultimately held on August 22, 1986, and Reid was bound over for trial. Between September 9, 1986 and June 24, 1987, with assistance from stand-by counsel, Reid filed five successful motions to compel disclosure of exculpatory evidence.

Reid represented himself at trial, personally cross-examining the State's witnesses, including Misty, with assistance from stand-by counsel. After the jury acquitted Reid on one count, he moved to set aside his convictions on the two remaining counts.

Sometime in September 1988, in response to a further motion to disclose exculpatory evidence, the State produced documents tending to undermine the credibility of Misty, her sister Wendy, and their mother. Among the documents were Manchester Police Department reports, dated December 20, 1985 ("1985 Report") and April 4, 1986 ("1986 Report"), prepared by Sergeant Simmons, containing questionable accounts of previous sexual assaults allegedly made against Misty by other individuals.[2] Reid also was provided with a New Hampshire Department of Children & Youth Services ("DCYS") file on Misty and her family, which included reports that Misty's mother had beaten and bruised Misty and engaged in sexual intercourse with her boyfriend in front of Misty. These allegations originated, in part, with Misty's sister, Wendy. It further revealed that Misty's mother had characterized Wendy's allegations as lies prompted by Wendy's drug use and desire to move in with her boyfriend when Wendy was only sixteen years old. The DCYS file also described aberrant sexual behavior by Misty herself, at age six, such as performing fellatio on another child.[3]

Reid was released on bail while the superior court conducted a "nonevidentiary hearing" on the motion to set aside his convictions. The court concluded that the police reports of prior sexual assaults constituted exculpatory impeachment evidence which gave rise to a reasonable probability that the outcome of Reid's trial would have been different had the evidence been disclosed to the trial court, since it directly undermined the testimony of Misty and her mother. Under the New Hampshire Rape Shield Law, Rev. Stat.Ann. § 632–A:6, "a defendant must be afforded the opportunity to show, by specific incidents of sexual conduct, that the prosecutrix has the experience and ability to contrive a statutory rape charge against him." *State v. Howard,* 121 N.H. 53, 61, 426 A.2d 457 (1981). On October 5, 1988, the superior court set the two remaining convictions aside and ordered a new trial. In December 1988, all charges against Reid were dropped.

## B. *The Federal District Court Proceedings*

### (i) *The Original Complaint*

The original civil rights complaint in federal district court alleged that between the date of arrest, June 1986, and the date his convictions were set aside, October 1988, prosecutors Wageling and McDonough caused Reid to be deprived of his liberty without probable cause in violation of the Fourth Amendment. It alleged that the prosecutors, by withholding the exculpatory evidence, violated Reid's rights to due process, a fair trial, equal protection of the laws, and to confront and obtain witnesses. Reid further alleged that he was arrested by Manchester Police Sergeant Gary Simmons on the basis of unreliable information and that Simmons continuously withheld exculpatory

---

**1.** The arrest was made pursuant to New Hampshire Rev.Stat.Ann. § 594:10(II)(b), which provides that "[a]n arrest by a peace officer without a warrant on a charge of a felony is lawful whenever: ... The officer has reasonable ground to believe that the person arrested has committed a felony." The New Hampshire courts interpret "reasonable ground" as the substantial equivalent of "probable cause." *See State v. Vachon,* 130 N.H. 37, 533 A.2d 384, 386 (1987).

**2.** On their face, the reports do not indicate that Misty falsely accused anyone. The 1985 report indicates that Misty had been sexually abused by a person or persons unknown. The 1986 report states that Misty *denied* allegations made by a neighbor, who complained that Misty had been sexually abused by a man referred to simply as "George."

**3.** It is not clear whether the DCYS file was before the state court.

evidence between June 1986 and October 1988. Finally, he alleged that Richard Renfro, Esquire, deprived Reid of his Sixth Amendment right to the effective assistance of counsel by failing to prepare the case adequately for trial.

On June 19, 1989, a United States magistrate judge recommended that all but one claim be dismissed.[4] The report and recommendation noted that prosecutors Wageling and McDonough were absolutely immune from suit under *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), and that Reid had failed to allege the requisite state action to sustain a claim against defense counsel Renfro under *Polk County v. Dodson,* 454 U.S. 312, 320–21, 102 S.Ct. 445, 450–51, 70 L.Ed.2d 509 (1981).

### (ii) *The First Amended Complaint*

Reid filed an amended *pro se* complaint, alleging federal and state civil rights violations and adding Manchester Police defendants Gilman, Ahern and Paul. It alleged that the police defendants arrested Reid on the basis of unreliable information, in violation of the Fourth Amendment, and deliberately suppressed exculpatory evidence from the time of his arrest until after his trial, in violation of his right to equal protection, the effective assistance of counsel, a fair trial, due process, and the right to confront and obtain witnesses. The first amended complaint also alleged that prosecutors Wageling and McDonough had instructed their codefendants in the present civil rights action, and the witnesses at Reid's criminal trial, not to mention the police reports on prior sexual assault complaints relating to Misty, thereby prompting these codefendants to respond falsely to inquiries concerning the withheld evidence both before and during the criminal trial. *See Hilliard v. Williams,* 465 F.2d 1212, 1215 (6th Cir.1972), *rev'd,* 540 F.2d 220, 221 (6th Cir.1976) (per curiam). The first amended complaint reiterated Reid's allega-

tion that the prosecutors deliberately withheld the exculpatory evidence before, during, and for fourteen months after Reid's criminal trial, resulting in his unlawful conviction and imprisonment. Finally, it alleged that the defendant officers and prosecutors had conspired to deprive Reid of his constitutional rights.

The magistrate judge issued a Further Report and Recommendation on February 6, 1990, which concluded that the first amended complaint stated an actionable Fourth Amendment claim for false arrest against the police defendants and that Reid's motion to add police defendants Gilman, Ahern and Paul should be allowed. Citing *Imbler,* 424 U.S. at 430, 96 S.Ct. at 994, the magistrate judge concluded, nonetheless, that the claims against prosecutors Wageling and McDonough were barred by absolute prosecutorial immunity. Finally, the report recommended that the claim against Attorney Renfro be dismissed.

On March 22, 1991, the district court adopted the Further Report and Recommendation, effectively dismissing prosecutors Wageling and McDonough, and defense counsel Renfro, as defendants.[5]

### (iii) *The Third Amended Complaint*[6]

On June 10, 1992, following further discovery, Reid requested leave to file the third amended complaint, reasserting all claims against the prosecutors, adding a conspiracy claim against Renfro, and naming additional police and prosecutor defendants. The third amended complaint further particularized the claims against the police defendants, asserting that their failure to disclose exculpatory evidence constituted actionable malicious prosecution and violated Reid's constitutional rights. In contrast to the first amended complaint, which indicated that the prosecutors knew about the exculpatory evidence but instructed the police and others to conceal it, Reid's third amended complaint, liberally

---

**4.** The magistrate judge recommended that Reid be permitted to submit further documentation on the claim against Sergeant Simmons.

**5.** Reid and the police defendants objected to the Further Report and Recommendation. Although Reid did not object to dismissal of the claim

against Renfro, he reserved the right to amend it following discovery.

**6.** A second amended complaint, naming a former New Hampshire governor as a defendant, was dismissed by the district court.

construed, see *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976), asserted that *the police defendants knew the police reports and the DCYS file existed, but concealed them from the prosecutors for almost two years*, between June 1986 and August 1988. Thus, the third amended complaint restated Reid's previous allegations against the police defendants and pleaded distinct claims for negligence, false arrest, malicious prosecution, wrongful withholding of exculpatory evidence, and conspiracy.

As for the prosecutors and Attorney Renfro, the third amended complaint alleged, in the alternative, that the prosecutors knew of the exculpatory evidence but failed to disclose the information to Renfro, *or* that the prosecutors disclosed the exculpatory information to Renfro but enlisted him in their conspiracy to conceal the exculpatory information from Reid. We turn to the various claims raised on appeal.

## II

### *DISCUSSION*

**A. *The Claims Against the Prosecutors***

Reid contends that the district court erred in dismissing his claims against prosecutors Wageling and McDonough. He argues that *Imbler* "absolute immunity" should not extend to claims for withholding exculpatory evidence in direct violation of trial court orders, where it is alleged that the prosecutors repeatedly misled the trial court itself throughout the criminal proceedings. Reid claims that the disclosure orders issued by the trial court displaced whatever discretion the prosecutors may have had concerning disclosure of exculpatory evidence, conse-

quently their failure to disclose was not a prosecutorial function at all, but merely ministerial. Finally, he contends that the prosecutors repeatedly lied to the trial court about the existence of the exculpatory evidence, whereas in *Imbler* the prosecutor voluntarily disclosed the evidence shortly after learning of it. The district court dismissed the claims against the prosecutors as frivolous under 28 U.S.C. § 1915(d). We review only for abuse of discretion, see *Watson v. Caton*, 984 F.2d 537, 539 (1st Cir.1993), and find none.[7]

■ First, Reid alleged no facts suggesting that the prosecutors had anything to do with the arrest. The complaint therefore failed to state an actionable false arrest claim.[8]

■ Second, under *Imbler* "it is 'now [a] well-settled rule that a prosecutor cannot be held personally liable for the knowing suppression of exculpatory information.'" *Robinson v. Volkswagenwerk AG*, 940 F.2d 1369, 1372–73 (10th Cir.1991) (citation omitted), *cert. denied*, 502 U.S. 1091, 112 S.Ct. 1160, 117 L.Ed.2d 408 (1992); *Myers v. Morris*, 810 F.2d 1437, 1446 (8th Cir.), *cert. denied*, 484 U.S. 828 (1987).[9] *See Campbell v. Maine*, 787 F.2d 776, 777 (1st Cir.1986) (per curiam); *Hilliard v. Williams*, 540 F.2d 220, 221–22 (6th Cir.1976) (per curiam). The *Imbler* rule has been applied where prosecutors failed to disclose exculpatory evidence specifically requested by the defense, see *Jones v. Shankland*, 800 F.2d 77, 78–80 (6th Cir.1986), *cert. denied*, 481 U.S. 1048, 107 S.Ct. 2177, 95 L.Ed.2d 834 (1987), and where prosecutors misled the trial court in order to conceal their failure to disclose exculpatory evidence,

---

7. Although the magistrate judge recommended that the claims against the prosecutors be dismissed for "fail[ing] to state a cause of action"—language strongly suggesting a Rule 12(b)(6) dismissal—Reid was given notice of the deficiencies and a full opportunity to amend the complaint. Thus, dismissal under 28 U.S.C. § 1915(d) was proper. *See Purvis v. Ponte*, 929 F.2d 822, 826–27 (1st Cir.1991).

8. As New Hampshire recognizes the torts of false arrest and malicious prosecution, see *Stock v. Byers*, 120 N.H. 844, 424 A.2d 1122, 1123 (1980), those claims should have been analyzed under state law, rather than § 1983. Given an ade-

quate state-law remedy for a procedural due process violation, no § 1983 claim lies. *Perez–Ruiz v. Crespo–Guillen*, 25 F.3d 40, 42 (1st Cir.1994); *Smith v. Massachusetts Dep't. of Correction*, 936 F.2d 1390, 1402 (1st Cir.1991); *Torres v. Superintendent of Police*, 893 F.2d 404, 410 (1st Cir. 1990).

9. As New Hampshire law apparently affords no remedy for withholding exculpatory evidence, this claim is subject to § 1983 analysis. *See also Belcher v. Paine*, 136 N.H. 137, 612 A.2d 1318, 1322–23 (1992) (applying *Imbler* doctrine to malicious prosecution claim under state law.)

*see Wilkinson v. Ellis,* 484 F.Supp. 1072, 1082 (E.D.Pa.1980).

Thus, we think the trial court discovery orders did not displace *Imbler* immunity. In the first place, it is inaccurate to assert, as Reid does, that there was no prosecutorial discretion left to be exercised respecting the disclosure of this evidence. On the contrary, the disclosure orders were issued in response to motions for "any 'exculpatory' evidence which could assist [Reid] in the preparation and presentation of his defense," broad language indicating a general request for *Brady* material. The orders accordingly left the prosecutors with something more than a ministerial function to perform. The prosecutors were required to determine what evidence in their possession was "exculpatory" and subject to disclosure.[10] *Cf. Buckley v. Fitzsimmons,* —— U.S. ——, ——, 113 S.Ct. 2606, 2616, 125 L.Ed.2d 209 (1993) (when prosecutor evaluates evidence and interviews witnesses in preparation for trial, he functions within the scope of absolute immunity). *Imbler* expressly recognized that requiring prosecutors to defend—in section 1983 actions—decisions concerning the "materiality of evidence not revealed to the defense could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials." *Imbler,* 424 U.S. at 425–26, 96 S.Ct. at 993. The view expressed in the *Imbler* dissent—that abso-

lute immunity should attach only if the prosecutor has disclosed all facts which cast doubt on the State's evidence—was rejected by the *Imbler* Court because such a requirement would interfere "with the *legitimate exercise of prosecutorial discretion.*" *Id.* at 432, 96 S.Ct. at 996. *Imbler* thus implicitly acknowledged that prosecutors retain *discretion* to determine what evidence is to be disclosed under *Brady* and that absolute immunity attaches to their exercise of discretion.

The further allegation that these prosecutors repeatedly misled the trial court in order to conceal their alleged misconduct does not defeat absolute immunity. In *Burns v. Reed,* 500 U.S. 478, 489–90, 111 S.Ct. 1934, 1941, 114 L.Ed.2d 547 (1991), the Court sustained absolute prosecutorial immunity for "making false or defamatory statements in judicial proceedings (at least so long as the statements were related to the proceeding), and also for eliciting false and defamatory testimony from witnesses." *Imbler* stated that it is " 'better to leave unredressed the wrongs done by dishonest officers than to subject those who try to *do their duty* to the constant dread of retaliation.' " *See Imbler,* 424 U.S. at 428, 96 S.Ct. at 994 (quoting *Gregoire v. Biddle,* 177 F.2d 579, 581 (2nd Cir.1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950)).[11]

10. We recognize that N.H.Rev.Stat.Ann. § 632–A:6, on its face, bans evidence of prior sexual activity by a prosecutrix in a rape case: "Prior consensual sexual activity between the victim and any person other than the actor shall not be admitted into evidence in any prosecution under this chapter." However, the New Hampshire Supreme Court has read a constitutional limitation into this statutory ban in statutory rape cases, so as to preserve the statute from infirmity to constitutional attack. *Howard,* 121 N.H. at 61, 426 A.2d 457 (state constitution requires that the jury be informed of prior sexual experience of child prosecutrix in statutory rape case, since jury otherwise could infer that the prosecutrix must have gained her knowledge of sexual anatomy only through the alleged sexual assault). Whether and when to admit such evidence rests within the discretion of the trial court. *State v. Cox,* 133 N.H. 261, 575 A.2d 1320, 1322–23 (1990) (upholding trial court's exercise of discretion admitting *Howard*-type evidence only during cross-examination of prosecutrix). Thus, these prosecutors retained *some* discretion, at least, in evaluating whether the putative prior attacks

against Misty constituted *Brady* evidence. We do not suggest, of course, that the prosecutors were free to disregard the state court disclosure order, nor that there were no alternative means of avoiding a violation, as by submitting the evidence for *in camera* review.

11. Reid counters with *Martinez v. Winner,* 771 F.2d 424 (10th Cir.1985) (holding that prosecutor is not entitled to absolute immunity for filing false affidavit in bar disciplinary proceeding to cover up trial misconduct), and *Briggs v. Goodwin,* 569 F.2d 10 (D.C.Cir.1977), *cert. denied,* 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978) (holding prosecutor not entitled to absolute immunity for allegedly perjuring himself during grand jury proceedings, since prosecutor was then acting in investigative capacity). These cases are inapposite, as they involved prosecutors who were not acting as advocates for the State. Moreover, *Martinez* was reversed, *see Martinez,* 778 F.2d 553, 555–56 (10th Cir.1985), as to the point relied on by Reid, vacated by the Court, *Tyus v. Martinez,* 475 U.S. 1138, 106 S.Ct.

Nor was absolute immunity forfeited because the prosecutors continued to withhold the exculpatory evidence long after Reid's conviction.[12] *Imbler* specifically noted that absolute prosecutorial immunity is an essential guarantee that reviewing courts focus exclusively on the fairness of the underlying trial, not upon any collateral consequences a reversal might portend for the prosecutor. *Id.* at 427, 96 S.Ct. at 993; *cf. Patterson v. Von Riesen*, 999 F.2d 1235, 1238 (8th Cir. 1993) ("The Supreme Court has created no requirement that prosecutors reveal their trial mistakes to maintain their absolute immunity. . . .").[13]

■ Reid further contends that the district court failed to address his claim against the prosecutors in their *official capacities*. In order to prevail on an "official capacity" claim, Reid would have to show that the particular governmental entity had an unconstitutional custom or policy, *Monell v. New York City Dep't. of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978), which its representatives were executing with at least the tacit approval of governmental policymakers. *Id.* at 691, 98 S.Ct. at 2036 ("customs and usages" of local government may satisfy *Monell* requirement). Reid insists that he pleaded actionable claims against the County Prosecutor's office and the County of Hillsborough by alleging that the defendant prosecutors, themselves policy-making officials, continuously refused to produce the exculpatory evidence the court ordered disclosed.

We do not reach the question whether Reid alleged the requisite custom or practice under *Monell*, since he has not challenged the magistrate-judge's report and recommendation on this basis. *See Henley Drilling Co. v. McGee*, 36 F.3d 143, 150 (1st Cir.1994) (citing *Park Motor Mart Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir.1980) ("A party may file objections within ten days or he may not, as he chooses, but he shall do so if he wishes further appellate consideration.")). Accordingly, all claims against the prosecutors were properly dismissed.

## B. *The Claims Against the Police Officers*

After the false arrest claims were allowed to proceed, the police defendants contended that the district court had dismissed, as frivolous, the claim that the police deprived Reid of due process of law and a fair trial by concealing exculpatory evidence. Unable to obtain clarification of the district court dismissal order, Reid pursued further discovery in an attempt to establish each police defendant's awareness of the exculpatory evidence and whether, and when, the officers had dis-

---

1787, 90 L.Ed.2d 333 (1986), and later dismissed as moot, *Martinez*, 800 F.2d 230 (10th Cir.1986). Finally, *Briggs* is no longer viable in light of *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (all witnesses, including those who give perjured testimony, are absolutely immune from civil suit under § 1983). *See Briggs v. Goodwin*, 712 F.2d 1444 (D.C.Cir.1983), *cert. denied*, 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984) (prosecutor who gives perjured testimony is entitled to absolute immunity under *Briscoe* but not *Imbler*).

12. The first amended complaint alleged that these prosecutors, unlike the prosecutor in *Imbler*, did not disgorge the exculpatory evidence until more than a year after Reid was convicted.

13. We also reject the contention that their conduct following Reid's conviction is actionable under *Houston v. Partee*, 758 F.Supp. 1228, 1230–31 (N.D.Ill.1991) (holding that prosecutors are not entitled to absolute immunity for suppressing exculpatory evidence *first acquired after* § 1983 plaintiffs' murder convictions), *aff'd*, 978 F.2d 362 (7th Cir.1992), *cert. denied,* —— U.S.

——, 113 S.Ct. 1647, 123 L.Ed.2d 269 (1993). The *Houston* plaintiffs were convicted of shooting a gang member. While their appeals were pending, another gang member, in the context of a different investigation, informed the prosecutor as to the identities of the actual killers. The prosecutor, no longer representing the State in plaintiffs' criminal appeals, did not disclose this information to defense counsel. A few years after the convictions were affirmed on appeal, the real killers confessed. The three prosecutors who had been aware of the evidence neither disclosed it to defense counsel nor to the court, and plaintiffs were unjustly imprisoned for several more years.

*Houston* stressed that absolute immunity did not attach to the prosecutors' conduct because they acquired the evidence in their *investigative capacity*, at a time when they were not representing the State in the post-conviction proceedings. *See* 978 F.2d at 366–67. Reid has not alleged that these prosecutors did not represent the State after his conviction. Indeed, the record suggests otherwise.

closed what they knew to one another and to the prosecutors. The district court ultimately permitted the third amended complaint, including the false arrest claims and the concealment claims, to be filed against the police defendants.

### (i) *The Third Amended Complaint*

On February 14, 1992, the magistrate judge ordered the police defendants to respond to Reid's interrogatories and requests for production of documents. On June 10, Reid filed a motion to compel further responses to interrogatories, followed by motions to join additional defendants and for permission to file the third amended complaint alleging, *inter alia,* that the police defendants conspired with the prosecutors to conceal the exculpatory evidence. There followed, in July 1992, another motion to compel production.

Prior to any disposition of Reid's June 10 motions to compel responses to interrogatories and for leave to file the third amended complaint, the police defendants moved for summary judgment on qualified immunity grounds based on their contention that other evidence in their possession was sufficient to establish probable cause for Reid's arrest even assuming they had withheld the exculpatory evidence. In addition, Sergeant Simmons submitted an affidavit denying that he had withheld police reports relating to Misty. On August 27, 1992, Reid requested further time to respond to the police defendants' motion for summary judgment, because he was unable to do so until the district court ruled on his discovery requests.[14]

In November, 1992, the case was transferred from Rhode Island to New Hampshire and reassigned to a different district judge. On December 14, the newly assigned judge allowed Reid until January 11, 1993, to respond to the police defendants' motion for summary judgment. At the same time, the

court directed that Reid's motions to compel discovery and to substitute the third amended complaint be considered "withdrawn" from the docket, without prejudice to their renewal by January 4, 1993. Reid renewed each motion within the deadline and again sought additional time to respond to the motion for summary judgment.

On January 22, 1993, the district court allowed Reid seven days to respond in writing to the motion for summary judgment. The court denied Reid's motion to substitute the third amended complaint insofar as it would add claims against prosecutors Wageling and McDonough for malicious prosecution, denial of due process of law and false imprisonment caused by the failure to disclose the exculpatory evidence, and against Attorney Renfro for conspiring with the prosecutors to conceal the exculpatory evidence from Reid. At the same time, the court allowed an amendment adding a separate malicious prosecution claim against all police defendants and restating the claim that the police defendants had violated Reid's constitutional rights by continuously withholding the exculpatory evidence. Lastly, the district court rejected Reid's motion to compel further discovery under Fed.R.Civ.P. 56(f), on the ground that the discovery sought was not substantially related to the police defendants' qualified immunity claims.

On February 5, 1993, the district court granted summary judgment for all police defendants. Relying primarily on reports of the police investigation preceding Reid's arrest, the court reasoned that the police defendants were entitled to qualified immunity because an objectively reasonable police officer, based on all the evidence, including the exculpatory information withheld until August of 1988, nonetheless could have believed that there was probable cause to arrest Reid for sexually assaulting Misty, even assuming the police defendants concealed the exculpatory evidence.[15] The district court did not

---

**14.** Although Sergeant Simmons made reference to earlier police reports relating to Misty, he did not mention the DCYS file. Nor is it clear whether the police defendants were privy to its contents prior to Reid's arrest or conviction.

**15.** The district court did not have the exculpatory evidence when it ruled on either the motion for

summary judgment or the motion for reconsideration. Those materials were in the district court, however, for a single day—February 10—*after* summary judgment had been entered against Reid and *before* the motion for reconsideration was filed. Nor did the court have the opportunity to consider Reid's pro se memorandum in

mention the malicious prosecution claims relating to the alleged failure of the police defendants to disclose the exculpatory evidence, but concluded that "when probable cause exists notwithstanding the existence of some exculpatory evidence, no violation of the Fourth Amendment occurs and the shield of *qualified immunity* remains viable." (emphasis added). Final judgment was entered dismissing all claims against the police defendants on February 8.

On February 10, the district court clerk received and docketed Reid's *timely* opposition to the motion for summary judgment, together with his supporting affidavit, exhibits, memorandum, and statement of contested and uncontested facts.[16] The supporting materials included the 1985 and 1986 police reports, which recorded prior complaints of sexual assaults against Misty, as well as portions of the DCYS reports describing relevant family history.

The DCYS reports described how Misty and her sister, Wendy, had been physically abused by their mother. The allegations were made by *Wendy,* and by a former roommate of Misty's mother. The reports related that Misty's mother engaged in sexual intercourse in Misty's presence. The former roommate described how she had found Misty fellating her four-year-old son on April 17, 1985. Misty's mother denied the allegations and accused Wendy of making false charges in order to force the mother into allowing her to move in with a boyfriend, and

because Wendy was under the influence of drugs.

The DCYS reports further indicated that Wendy had refused to return to her mother's residence for a period of two weeks, and that the Manchester Police had attempted, without success, to find Wendy and return her to her mother. Wendy requested that she be placed in protective custody, but that her request was denied "due to lack of concrete evidence." Later, after joint counseling, Wendy voluntarily returned home. Finally, the DCYS reports reflect that during 1985—the year before Reid's arrest—Misty's mother was under investigation for child abuse and neglect.

Reid contended that these materials established that both Misty and her mother were unreliable and that the mother had an ulterior motive for fabricating charges against Reid since she had been the subject of a DCYS investigation for abuse and neglect based on Wendy's allegations that the mother repeatedly had beaten her and Misty.[17]

Although Reid's timely opposition and supporting materials were received and docketed on February 10, the police reports and the DCYS reports were returned to Reid the same day by the clerk, pursuant to Local Rule 14 which provides that the clerk is not required to retain discovery materials. On February 22, Reid moved for reconsideration of the summary judgment order entered February 8.[18] Reconsideration was summarily denied on May 10, 1993, though the

---

opposition to summary judgment before granting summary judgment against him, though it did so prior to ruling on the motion for reconsideration.

**16.** Weekends, legal holidays, and January 22—the date of the denial of the motion to compel—should have been excluded from the running of the seven-day filing period. *See* Fed.R.Civ.P. 6(a). Rule 6(e) further required that three days be added to the prescribed response period since the court order had been mailed to Reid. Fed. R.Civ.P. 6(e). Thus, he had until February 5, 1993, to respond. Reid seasonably filed opposition to the motion for summary judgment by depositing it with the prison warden on February 5. *See Houston v. Lack,* 487 U.S. 266, 275, 108 S.Ct. 2379, 2384, 101 L.Ed.2d 245 (1988) (holding that filing periods for prisoners are determined when submitted to prison warden) (analogous FRAP 4 context); *Oliver v. Commissioner of*

*Massachusetts Dep't. of Corrections,* 30 F.3d 270, 272 (1st Cir.1994) (same).

**17.** Reid contended further that the police defendants had not established their entitlement to summary judgment on his claim that they withheld the exculpatory evidence. The Reid affidavit attested that Sergeant Simmons had never disclosed—at the probable cause hearing—his prior reports of contact with Misty, nor "any other information which would lead a person to [believe] that the allegation made by the complainant wasn't the first such allegation made by her."

**18.** The motion for reconsideration, accompanied by a supporting affidavit and memorandum, was served on February 16, within ten days of the entry of the district court judgment on February 8, as required by Fed.R.Civ.P. 59(e).

exculpatory evidence was not before the court. The district court noted, however, that it had considered Reid's *pro se* objection and memorandum in opposition to the motion for summary judgment, which described some of the exculpatory evidence. Reid appealed.

We review the summary judgment order *de novo, Lallemand v. University of Rhode Island,* 9 F.3d 214, 215 (1st Cir.1993), the Rule 56(f) order for abuse of discretion, *Mattoon v. City of Pittsfield,* 980 F.2d 1, 7 (1st Cir.1992), and the order denying reconsideration for abuse of discretion, *DeSenne v. Jamestown Boat Yard, Inc.,* 968 F.2d 1388, 1392 (1st Cir.1992).

The district court prematurely granted summary judgment on the claims that Reid was arrested without probable cause and that the police failed to disclose the exculpatory impeachment evidence to the prosecutors. As noted above, *see* note 8 *supra,* a procedural due process claim may not be redressed under section 1983 where an adequate state remedy exists. *Perez–Ruiz v. Crespo–Guillen,* 25 F.3d 40, 42 (1st Cir.1994); *Smith v. Massachusetts Dept. of Correction,* 936 F.2d 1390, 1402 (1st Cir. 1991); *Torres v. Superintendent of Police,* 893 F.2d 404, 410 (1st Cir.1990). Since New Hampshire recognizes the common-law torts of false arrest, *Hickox v. J.B. Morin Agency, Inc.,* 110 N.H. 438, 272 A.2d 321, 323 (1970), and malicious prosecution, *Stock v. Byers,* 120 N.H. 844, 424 A.2d 1122, 1123 (1980), the claim that Reid was arrested without probable cause should have been addressed under New Hampshire law, not section 1983. *Richardson v. Chevrefils,* 131 N.H. 227, 552 A.2d 89, 92 (1988); *Opinion of the Justices,* 126 N.H. 554, 493 A.2d 1182–90 (1985); *Merrill v. Manchester,* 114 N.H. 722, 332 A.2d 378, 383 (1974) (abrogating doctrine of municipal immunity); *see also* N.H.Rev.Stat.Ann. § 491:24. On the other hand, the allegation that the police withheld the exculpatory evidence from the prosecutors does not state an actionable claim under New Hampshire common law and thus must be analyzed under federal law in accordance with section 1983 jurisprudence. *See Walker v. City of New York,* 974 F.2d 293, 300 (2d Cir.1992), *cert.*

*denied,* —— U.S. ——, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993), and *cert. denied,* —— U.S. ——, 113 S.Ct. 1412, 122 L.Ed.2d 784 (1993); *Henderson v. Fisher,* 631 F.2d 1115, 1119 (3d Cir.1980) (per curiam); *Taylor v. Hansen,* 731 F.Supp. 72, 78 (N.D.N.Y.1990); *Carter v. Harrison,* 612 F.Supp. 749, 758 (E.D.N.Y.1985).

Federal Rule of Civil Procedure 56(f) provides a safety valve for claimants genuinely in need of further time to marshal "facts, essential to justify [their] opposition . . . to a summary judgment motion." *Mattoon,* 980 F.2d at 7; *see Morrissey v. Boston Five Cents Savings Bank,* 54 F.3d 27, 34–35 (1st Cir.1995) (further discovery sought under Rule 56(f) must be such as could establish a triable issue). The Rule 56(f) motion must "(1) articulate a plausible basis for the belief that discoverable materials exist which would raise a trialworthy issue and (2) demonstrate good cause for failure to have conducted discovery earlier." *Id.* We have held that where the movant satisfies the requirements of Rule 56(f), "a strong presumption arises in favor of relief." *Resolution Trust Corp. v. North Bridge Assoc.,* 22 F.3d 1198, 1203 (1st Cir.1994).

Reid made a timely motion to defer ruling on the summary judgment motion, supported by an affidavit sufficiently describing the requested discovery. Prior to the Rule 56(f) motion, moreover, the magistrate judge had ordered the police defendants to respond to interrogatories previously filed by Reid. The police defendants have never complied with the order to respond to these interrogatories. The unanswered interrogatories directly concern the critical DCYS reports on Misty, Wendy and their mother, and when the various police defendants became aware of these reports.

The requested discovery was essential to Reid's claims against the police defendants. When the individual police defendants learned of the exculpatory evidence is relevant to (1) whether the individual defendants reasonably could have believed there was probable cause to arrest Reid (false arrest claim) and (2) whether they initiated the

criminal prosecution knowing that probable cause was lacking (malicious prosecution claim). When the exculpatory evidence was transmitted to the prosecutors is relevant to determining (3) whether the individual defendants attempted to withhold *Brady* material from the prosecutors (section 1983 claim). The unanswered interrogatories were pertinent to all these matters. As the discovery sought is such that it could arguably generate a trialworthy issue of material fact, we must determine whether Reid complied with the other strictures of Rule 56(f).

Given the direct police involvement in the bitter dispute between Wendy and her mother, and the two police reports relating prior sexual abuse of Misty, it cannot be considered implausible in the least that the police had *access* to the exculpatory information prior to Reid's arrest. The requested information was within the control of the police defendants, a factor which weighs heavily in favor of relief under Rule 56(f). *North Bridge Assoc.*, 22 F.3d at 1208 (reversing denial of Rule 56(f) motion). Furthermore, Reid not only sought discovery in a timely manner, but obtained a court order requiring the police defendants to respond to his interrogatories. *See Mattoon*, 980 F.2d at 7 (failure of movant to pursue discovery with diligence permits denial of Rule 56(f) motion). Finally, the Reid motion, affidavit and interrogatories plainly identified the information requested. *See Murphy v. Timberlane Regional Sch. Dist.*, 22 F.3d 1186, 1197 (1st Cir.) (upholding denial of Rule 56(f) motion where movant failed to identify information sought and to submit supporting affidavit), *cert. denied*, — U.S. —, 115 S.Ct. 484, 130 L.Ed.2d 396 (1994); *Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 39 (1st Cir.1992) (finding abuse of discretion in denying portion of Rule 56(f) motion which clearly related facts which would generate a trialworthy issue).

In these circumstances Reid was entitled to receive responses to the unanswered interrogatories as previously ordered by the court, and the additional discovery requested in the Rule 56(f) motion. *See generally Farmer v. Brennan*, — U.S. —, —, 114 S.Ct. 1970, 1985, 128 L.Ed.2d 811 (1994) (remanding Rule 56(f) ruling for reconsideration in light of Court's holding that the central issue governing plaintiff's claim was when state officials actually acquired certain information). On remand, therefore, Reid should be allowed to conduct reasonable further discovery relating to the state-law and section 1983 claims against the police defendants.

## C. *The Conspiracy Claim Against Defense Counsel*

▮ Lastly, Reid challenges the denial of his motion to amend the third amended complaint by adding the claim that Attorney Renfro conspired with the prosecutors to conceal the exculpatory evidence. We review for abuse of discretion. *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 59 (1st Cir. 1990). "Where an amendment would be futile or would serve no legitimate purpose, the district court should not needlessly prolong matters." *Id.*

▮ The allegation that Renfro saw the exculpatory evidence, yet did not bring it to Reid's attention, is too conclusory to state a viable conspiracy claim. *See Hunt v. Bennett*, 17 F.3d 1263, 1268 (10th Cir.) (allegation that attorney provided incompetent defense held insufficient to generate triable issue on conspiracy charge), *cert. denied*, — U.S. —, 115 S.Ct. 107, 130 L.Ed.2d 55 (1994). The conclusory allegation that Renfro had access to the prosecution's file is insufficient to generate a trialworthy issue as to whether he had actual knowledge of the exculpatory evidence, since there is no allegation that the prosecution materials made available to Renfro included the exculpatory material. *See Slotnick v. Garfinkle*, 632 F.2d 163, 165–66 (1st Cir.1980) (per curiam). Accordingly, we conclude that the refusal to allow yet another amendment to the complaint at the present time did not constitute an abuse of discretion under the *Correa–Martinez* standard.[19]

---

**19.** We note, nonetheless, that should further discovery result in new evidence relating to the nature and timing of the prosecutors' and defense counsel's acquisition of the exculpatory evidence, we are confident that a responsive proposal to amend the claim against Renfro would be accorded due consideration in light of the appropriate equitable criteria. *See Quaker State*

## III

### *CONCLUSION*

For the foregoing reasons, we affirm the summary judgment dismissing the claims against prosecutors Wageling and McDonough and the conspiracy claim against defendant Renfro. We vacate the judgment entered in favor of the police defendants, Simmons, Gilman, Ahern and Paul, on the false arrest, malicious prosecution, and due process claims, and remand all claims against the police defendants for further proceedings, including reasonable discovery. *The police defendants shall bear two-thirds of appellant's costs on appeal; all other costs are to be borne by the party who incurred them.*

***So ordered.***

*Oil Refining v. Garrity Oil Co.*, 884 F.2d 1510,    1517 (1st Cir.1989).