Dennis MAHER

v.

TOWN OF AYER, The Ayer Police Department, Nancy Taylor–Harris a/k/a Nancy Taylor, in her individual capacity, and John and Jane Does Nos. 1–15, in their individual Capacities, City of Lowell, The Lowell Police Department, Edward F. Davis III, in his individual capacity, Garrett Sheehan, in his individual capacity, Mark T. Grant, in his individual capacity, and John and Jane Does Nos. 16–30.

Civil Action No. 06–CV–10514–RGS.

United States District Court,
D. Massachusetts.

Nov. 30, 2006.

Gregg J. Corbo, Joseph L. Tehan, Jr., Kopelman & Paige, PC, Maite A. Parsi, Attorney General's Office, Government Bureau/Trial Division One, Boston, MA, Brian W. Leahey, Christine P. O'Connor, City of Lowell Law Department City Hall, Lowell, MA, Eugene P. McCann, Manzi & McCann, Lawrence, MA, for Defendants.

Robert N. Feldman, Melissa M. Longo, Birnbaum & Associates, P.C., Boston, MA, for Plaintiff.

*MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION PURSU-ANT TO RULE 56(f) AND DEFEN-DANTS' MOTION FOR SUMMARY JUDGMENT*

STEARNS, District Judge.

This case arises out of the conviction of plaintiff Dennis Maher in 1984 for three crimes he did not commit: an August 17, 1983 rape of a woman in Ayer, Massachusetts; a November 16, 1983 rape of a woman in Lowell, Massachusetts; and a November 17, 1983 sexual assault on a third woman in Lowell. Nineteen years after Maher's convictions, DNA tests performed on evidence collected during the investigation of the crimes proved conclusively that Maher was innocent. After a motion for a new trial was granted, the Commonwealth filed a nolle prosequi as to all three charges, acknowledging that Maher had been wrongly convicted. On March 22, 2006, this civil action was filed against the Town of Ayer, the City of Lowell, and the law enforcement officials involved in the investigation of Maher's case.

On June 19, 2006, the Lowell defendants filed a motion to dismiss. On September 1, 2006, the Ayer defendants moved for summary judgment. On September 15, 2006, defendant Mark Grant, a forensic chemist, filed a separate motion to dismiss. The motions were heard collectively on November 6, 2006. The court denied the motions to dismiss and reserved judgment on the Ayer defendants' motion for summary judgment. The court provisionally denied Maher's motion under Rule 56(f) to conduct additional discovery, but granted Maher ten days to supplement the motion by specifying the additional discovery that he would take "that would have a material bearing" on his case. Maher has since complied. The court will now address the Ayer defendants' motion for summary judgment.

## BACKGROUND

I will sketch the facts that are undisputed or that have been developed to date in the light most favorable to Maher as the non-moving party. On August 17, 1983, Marilyn Goss was raped by an intruder while spending the night at the Casa Manor Motel in Ayer.[1] Goss was convinced that she had seen her assailant the previous afternoon acting suspiciously in the motel

---

1. Goss's identity is a matter of public record.

parking lot.[2] The next morning, after spending the night in her car while seeking to regain her composure, Goss reported the rape to the Pepperell police. Goss told Alan Davis, the responding officer, that she would feel more comfortable talking to a female officer. Upon learning that the crime had been committed in Ayer, Davis asked defendant Nancy Taylor, an Ayer officer, to take over the investigation.[3]

Taylor came immediately to Goss's home. Goss gave Taylor a statement and a description of her attacker. Taylor then took Goss to a local hospital where Goss was examined. The treating physician assembled a Johnson Rape Evidence Gathering Kit. Two days later at the Ayer police station, Taylor showed Goss approximately two hundred photographs of men resembling Goss's description. Goss was unable to identify the perpetrator from among the photos.

On November 17, 1983, Maher was arrested by Lowell police as a suspect in a rape and a separate sexual assault, both of which had occurred in Lowell during the preceding twenty-four hours. The next night, Goss was arrested for assault and battery on an Ayer police officer in circumstances that are unexplained. In December of 1983, Taylor was contacted by a Lowell detective, William Dow, who asked if she would be interested in a photograph of a suspect in a recent Lowell rape. When Taylor said yes, Dow sent her a photo of Maher.

In early January of 1984, Taylor came to Goss's home to show her an array of ten photographs, including Maher's.[4] Goss told Taylor that the man depicted in the third photograph (Maher) looked "almost exactly" like the rapist. At some point during the process, Taylor told Goss that she had observed Goss tremble visibly while viewing Maher's photo.[5] Goss also viewed a photograph of a knife, which she said looked like the one wielded by her assailant.[6] On January 4, 1984, Taylor applied for and obtained an arrest warrant for Maher from a clerk-magistrate of the Ayer District Court. Maher was arrested later that day.

In mid-December of 1983, the assault and battery charge against Goss was dismissed in exchange for her cooperation in the case against Maher. On January 9, 1984, Taylor submitted the rape kit, the bed linens taken from the Casa Manor Motel, and Goss's clothing to the State Police Laboratory for analysis. On January 13, 1984, the Laboratory reported that "[s]eminal fluid residue containing sperm cells was detected on the vaginal smear slide and one bed sheet; choline, an ingredient of seminal fluid was also detected on the bed sheet."[7] On February 1, 1984, Goss was brought to the Ayer District

---

2. She had in fact made a "suspicious person" call to the Ayer police.

3. Taylor was at the time an Ayer dispatch officer with very limited police training. She was, however, known to the Pepperell police having worked in a similar capacity on the Pepperell department prior to joining the Ayer force.

4. Taylor had borrowed nine of the photos from the Pepperell police as she had previously shown Goss all of the relevant mugshots in the Ayer files.

5. Whether this was said before or after Goss identified Maher is a matter of dispute.

6. It is not altogether clear from the record, but the knife was presumably seized from Maher's car upon his arrest.

7. It is not clear from the record whether the State Police Laboratory report was ever given by Taylor to the Assistant District Attorney who prosecuted Maher's case.

Court to view a lineup of seven men. After viewing the men from a distance of approximately 5 to 6 feet for 20 to 30 seconds, Goss identified Maher as the perpetrator.

On February 5, 1984, Maher was indicted for the aggravated rape of Goss. The trial began on April 17, 1984. Goss testified and positively identified Maher as the rapist. A second witness, Richard Nichols, testified that he had seen Maher on several occasions in August of 1983 in the parking lot at the Casa Manor Motel driving a green Ford Maverick.[8] Maher testified in his own defense, insisting that he was home sleeping when Goss was raped. He also stated that his Ford Maverick was not registered or operable in August of 1983 and that he did not know Nichols.

The jury returned a verdict of guilty.[9] Maher was sentenced to life in state prison. In July of 2001, a law student volunteering on Maher's behalf located the physical evidence from the case. DNA testing of semen stains on the clothing of the Lowell rape victim and on the vaginal smear slide in Goss's rape kit conclusively exonerated Maher of both crimes.

## DISCUSSION

Maher's allegations against Taylor and the other Ayer defendants fall into three separate but related categories: (1) that Taylor violated his Fourth Amendment rights by orchestrating his arrest without probable cause; (2) that Taylor violated his right to substantive due process by (a) suborning perjury (the testimony of Goss and Nichols), (b) by withholding exculpatory evidence (the inducement to Goss and the laboratory results), and (c) by persuading Goss to identify him falsely; and (3)

that Taylor's municipal employer and supervisors failed to properly train and supervise her in the performance of her official duties.

 Probable cause is established by "evidence demonstrating that 'at the time of the arrest, the facts and circumstances known to the arresting officers were sufficient to warrant a prudent person in believing that the [arrestee] had committed or was committing an offense.'" *Grant v. John Hancock Mutual Life Ins. Co.*, 183 F.Supp.2d 344, 357 (D.Mass.2002), quoting *United States v. Bizier*, 111 F.3d 214, 217 (1st Cir.1997). The standards defining probable cause are "not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Probable cause means "reasonable cause," something significantly less exacting than "more likely than not" or "by a preponderance" of the evidence. *United States v. Melvin*, 596 F.2d 492, 495 (1st Cir.1979). Probable cause "merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (plurality opinion) (citation omitted). Where "there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them," the existence of probable cause for an arrest is an issue for the jury; on the other hand, where the historical facts are established or undisputed, the issue becomes a mixed question of law and fact suitable for determination by the

---

**8.** Nichols was a witness produced for the prosecution by Taylor.

**9.** Prior to the Goss trial, Maher was convicted of the November 16, 1983 Lowell rape and the November 17, 1983 Lowell sexual assault.

court. *Maxwell v. City of Indianapolis,* 998 F.2d 431, 434 (7th Cir.1993). *See also Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *Acosta v. Ames Department Stores, Inc.,* 386 F.3d 5, 8–9 (1st Cir.2004).

■ The Ayer defendants invoke the well-settled proposition that "police officers can justifiably rely upon the credible complaint by a victim to support a finding of probable cause," *Forest v. Pawtucket Police Department,* 377 F.3d 52, 57 (1st Cir.2004), as well as on the equally established proposition that a finding of probable cause for an arrest by a neutral magistrate is ordinarily preclusive of any liability on an arresting officer's part. *Cf. Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Sanchez v. Swyden,* 139 F.3d 464, 468 n. 8 (5th Cir.1998). On its face, Goss's positive identification of Maher, even though mistaken, would have most likely been deemed by the clerk-magistrate who issued the warrant for Maher's arrest as a sufficient basis for a finding of probable cause. The result would be different, however, if as Maher claims, Taylor deliberately or recklessly misled the magistrate about the circumstances and strength of Goss's identification for some as yet unarticulated motive. *See Malley v. Briggs,* 475 U.S. 335, 345, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Burke v. Town of Walpole,* 405 F.3d 66, 82 (1 st Cir.2005). That will depend on whether Maher can show that Taylor knew that Goss's identification was fabricated (or induced by improper suggestion), and that this fact was concealed by Taylor from the magistrate. Maher claims that he learned of the alleged inducement offered to Goss only after the authorized period of discovery had expired. Accepting this representation as true, Maher is entitled to explore the issue fully before the court acts on his lack of probable cause claim.

■ Maher's second theory of liability involves alleged violations of his right to substantive due process. "[A] claim is cognizable as a violation of substantive due process 'only when it is so extreme and egregious as to shock the contemporary conscience.'" *McConkie v. Nichols,* 446 F.3d 258, 260 (1st Cir.2006), quoting *DePoutot v. Raffaelly,* 424 F.3d 112, 118 (1st Cir.2005). "We have emphasized time and again that '[t]he touchstone of due process is protection of the individual against arbitrary action of government,' ... whether the fault lies in a denial of fundamental procedural fairness, ... or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective ...." *County of Sacramento v. Lewis,* 523 U.S. 833, 845–846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). To be actionable under the Due Process Clause, misconduct by state actors must exceed a high threshold of allowance for human shortcomings in managing the intricate processes of government. "[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.... It is, on the contrary, behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.,* 523 U.S. at 849, 118 S.Ct. 1708.

■ The question of whether Taylor's conduct is of the kind that would "shock the contemporary conscience" is a threshold matter that must be resolved before the constitutional issues raised by Maher's claims can be definitively addressed. *De-*

*Poutot,* 424 F.3d at 118. Maher's most damning allegation against Taylor is that she intentionally undertook a campaign to frame him for a crime that she knew he did not commit and for which he paid with twenty years of his life. Maher's fundamental constitutional claim is premised on alleged violations by Taylor of her obligation as an officer of the State to disclose evidence that could have been put to exculpatory use at trial, *Brady v. Maryland,* 373 U.S. 83, 87–88, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), including the accommodation made to Goss to induce her to testify. *Giglio v. United States,* 405 U.S. 150, 153–155, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). While (as the Ayer defendants argue) absolute immunity attaches to the conduct of even a perjurious witness in a judicial proceeding, *Briscoe v. LaHue,* 460 U.S. 325, 341–346, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), a substantive due process claim based on a deliberate *Brady* violation constitutes a viable cause of action under section 1983. *See Reid v. New Hampshire,* 56 F.3d 332, 341–342 (1st Cir. 1995); *Charles v. City of Boston,* 365 F.Supp.2d 82, 88–89 (D.Mass.2005). *Cf. San Filippo v. U.S. Trust Co. of N.Y., Inc.,* 737 F.2d 246, 254–255 (2d Cir.1984) (refusing to extend the *Briscoe* shield to the pretrial subornation of perjury); *but see Jones v. Cannon,* 174 F.3d 1271, 1288–1289 (11th Cir.1999).[10]

 If, in fact, Taylor acted with a sinister or similarly culpable motive, and as Maher alleges, deliberately elicited a false identification from Goss, procured perjurious testimony from Nichols, and withheld exculpatory evidence (including a *quid pro quo* dismissal of criminal charges against Goss), all in pursuit of an unlawful conviction, it would be a very hardened conscience indeed that would not be shocked.[11] One might be skeptical that Taylor harbored such a motive or had any reason for personal animus against Maher, but on the present record, other than Taylor's denials (whether "self-serving" or not), it is impossible to make a conclusive determination. If the only theory of liability advocated by Maher was a lack of probable cause for his arrest—the one area in which the court permitted discovery, I would be inclined to think that Maher's ultimate chance of prevailing might be slim. But in light of the more expansive section 1983 grounds on which Maher seeks to proceed, the factual record is at present too undeveloped to permit a fair assessment of the merits of the case.

The final cluster of claims seeks to assign liability to Taylor's supervisors and to the Town of Ayer. These claims are, of course, derivative and dependent on Maher's ability to prove his allegations against Taylor. If these fail, the derivative claims fail as well. *See Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam); *Evans v. Avery,* 100 F.3d 1033, 1040 (1st Cir.1996); *Nieves v. McSweeney,* 241 F.3d 46, 50 (1st Cir.

---

**10.** To the extent that Maher is suggesting a pretrial conspiracy between Taylor and Goss to present perjured testimony at trial, there is case law supportive of a cause of action on this basis. *See, e.g., Dory v. Ryan,* 25 F.3d 81, 83–84 (2d Cir.1994).

**11.** To the extent that Maher's due process theory is based on the civil tort of malicious prosecution, it would appear foreclosed in this Circuit by *Reid,* 56 F.3d at 336 n. 8, 341

(acknowledging, however, the potential viability of a section 1983 malicious prosecution claim grounded on the Fourth Amendment). *Compare Castellano v. Fragozo,* 352 F.3d 939, 958 (5th Cir.2003) (en banc) (while there is no constitutional tort of malicious prosecution, the use of perjured testimony and fabricated evidence by the State can be "so destructive of a fair trial that it cannot be justified by procedures").

2001).[12]

## ORDER

For the foregoing reasons, the Ayer defendants' motion for summary judgment on Maher's federal claims will be *DENIED* without prejudice. Maher's motion pursuant to Rule 56(f) will be *ALLOWED* and discovery will proceed in the ordinary course. The parties will submit a joint proposed order regulating the conduct of further discovery within fifteen (15) days of the date of this Order.

SO ORDERED.

**12.** Taylor contends that she is in any event shielded from liability by qualified immunity. In assessing a claim of qualified immunity, a prescribed sequence is to be followed. The court "must first determine whether the plaintiff has alleged a deprivation of an actual constitutional right at all," before considering whether that right was clearly established when the alleged violation occurred or whether a reasonable officer would have understood her actions to be in violation of that clearly established right. *Conn v. Gabbert,* 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999). It is on the first leg of this tripartite analysis that Taylor stands, that is, she contends that she committed no constitutional violation at all. Whether or not this is the case is decided by a summary judgment standard: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The court having determined that summary judgment cannot appropriately enter in Taylor's favor on the present record, it follows that a grant of qualified immunity would be similarly premature. The court also declines at this time to consider the Ayer defendants' challenge to Maher's various state-law claims. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).