Manuel **ANGULO–ALVAREZ**, et al., Plaintiffs–Appellants,

v.

Jose E. **APONTE DE LA TORRE**, et al., Defendants–Appellees.

No. 98–1587.

United States Court of Appeals, First Circuit.

Heard Nov. 5, 1998.

Decided March 19, 1999.

Jesús M. Hernández–Sánchez for appellants.

Luis E. Pabón–Roca for appellee Municipality of Carolina and José E. Aponte in his Official Capacity as Mayor, Leticia Casalduc–Rabell, Assistant Solicitor General, U.S. Department of Justice for appellee José E. Aponte, Mayor of Carolina, in his individual capacity, with whom Carlos Lugo–Fiol, Solicitor General, U.S. Department of Justice and Edda Serrano–Blasini, Deputy Solicitor General, U.S. Department of Justice, were on brief.

Before TORRUELLA, Chief Judge, HALL,* Senior Circuit Judge, and LIPEZ, Circuit Judge.

LIPEZ, Circuit Judge.

Manuel Angulo–Alvarez and twelve of his former coworkers at the Department of Maintenance and Transportation of the Municipality of Carolina, Puerto Rico ("the Department"), appeal from a district court judgment dismissing their political discrimination claims against the Municipality of Carolina and its Mayor, José E. Aponte ("Mayor Aponte"). We affirm.

## I. Background

The plaintiffs are former career employees of the Municipality of Carolina who worked in the Department. They are also members of the New Progressive Party ("NPP"). Mayor Aponte, currently serving his third term in office, is a member of the Popular Democratic Party ("PDP"). In 1995, the Municipal Assembly of the Municipality of Carolina approved a plan to privatize the Department. The privatization plan called for the layoff of all employees in the Department, including the thirteen plaintiffs in this case.

Following the decision to privatize, the Municipality sent each employee a notification letter informing them that the decision to layoff personnel would be made pursuant to the "Layoff Plan."[1] The employees were later informed that the Municipality would attempt to relocate as many employees as possible by helping them obtain work with the private contractor taking over the Department or by placing them within other departments of the Municipality.

As part of this process, the plaintiffs were offered unskilled laborer positions with other departments in the Municipality of Carolina. These positions, however, constituted a demotion from their prior jobs. Seven of the thirteen plaintiffs met with municipal officials but declined their offers for employment. Six of the plaintiffs failed to meet with officials at all to discuss employment options. Municipal officers also called the plaintiffs to their offices so that plaintiffs could fill out job applications with the private company taking over the Department. Only three of the plaintiffs filled out the applications with the contractor.

The plaintiffs sued Mayor Aponte, in both his official and individual capacities, and the Municipality of Carolina pursuant to 42 U.S.C. § 1983. The plaintiffs alleged that the decision to privatize the Department, the Municipality's failure to relocate the plaintiffs within the Municipality, and its failure to later recall the plaintiffs when positions became available, were politically motivated in violation of their rights under the First and Fourteenth Amendments to the United States Constitution.

Defendants moved for a summary judgment on the plaintiffs' claims that the decision to privatize the Department and the failure to relocate the plaintiffs were acts of political discrimination. The district court granted summary judgment on the privatization claim on the ground that the plaintiffs failed to offer any evidence from which a factfinder could infer that political affiliation was a substantial or motivating factor in the elimination of the Department.[2] On the relo-

* Of the Ninth Circuit, sitting by designation.

1. In 1993, pursuant to his powers under the Autonomous Municipalities Act of the Commonwealth of Puerto Rico, Mayor Aponte adopted a "Layoff Plan" which would serve to regulate any layoffs of personnel as a result of lack of funds, work shortages, reorganization, the implementation of technological advances or the privatization of governmental services. The plan applied to all career service employees, temporary employees and non-regular employees.

2. The plaintiffs argue that the district court was barred from considering defendants' summary judgment motion under Fed.R.Civ.P. 16(b) and 16(e) because the motion was filed three days after the court-imposed scheduling deadline for all dispositive motions. The three day delay in filing the motion did not cause the plaintiffs any prejudice. A trial date had not been set at the time that defendants' motion was submitted. Following the motion's late filing, the plaintiffs requested and were granted an extension of time to oppose the motion, finally filing their opposition eight weeks later. It was only then that the plaintiffs objected to the late filing of defendants' summary judgment motion. Although it is true that defendants did not request an extension of time in which to file the summary judgment motion, the district court did not abuse its discre-

cation claim,[3] however, the district court denied summary judgment.[4]

Following the entry of a partial summary judgment, the district court ordered the claims of failure to relocate and failure to recall plaintiffs to proceed and scheduled a pre-trial settlement conference. At the conference, the court found that the plaintiffs, on the eve of trial, had not yet offered the evidence necessary to proceed in a political discrimination case. As a result, the district court ordered *each* plaintiff to file answers, under oath, to four interrogatories issued by the court itself. Only one of the thirteen plaintiffs, Angulo–Alvarez, filed answers to the court-ordered interrogatories within the prescribed time. Defendants filed a motion to dismiss the plaintiffs' complaint for failure to comply with the court's order. The district court granted the motion with respect to the twelve plaintiffs who failed to respond in toto. It also granted a dismissal of Angulo–Alvarez's claim on the ground that his answers were inadequate.

The plaintiffs appeal the entry of summary judgment on their privatization claim and the subsequent dismissal of their remaining claims of failure to relocate and failure to recall.

## II. Summary Judgment

We review the summary judgment entry de novo, taking the facts in a light most favorable to the nonmoving party. *See Rivera–Cotto v. Rivera*, 38 F.3d 611, 613 (1st Cir.1994). We will affirm the entry of judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. Even where motive or intent is at issue, "summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Rivera–Cotto*, 38 F.3d at 613(quoting *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)).

When political discrimination is alleged in a case involving the dismissal of a non-policymaking employee, the plaintiff must first produce sufficient evidence, either direct or circumstantial, from which a "rational jury could find that political affiliation was a substantial or motivating factor behind the adverse employment action." *Rodriguez–Rios v. Cordero*, 138 F.3d 22, 24 (1st Cir.1998). Once the plaintiff meets the threshold burden, the burden then shifts to the defendant-employer who must "articulate a nondiscriminatory basis for the adverse employment action and prove by a preponderance of the evidence that it would have been taken without regard to plaintiff's political affiliation." *Id.; see also LaRou v. Ridlon*, 98 F.3d 659, 661 (1st Cir.1996); *Acevedo–Diaz v. Aponte*, 1 F.3d 62, 66 (1st Cir. 1993).

Here, the plaintiffs claimed that privatization of the Department was an act of political discrimination. The district court concluded that the plaintiffs had failed to present *any* evidence "from which [one] might infer that political affiliation was the substantial or motivating factor in the elimination of the [Department]." We agree. The plaintiffs' complaint stated that the plaintiffs were NPP followers and that Mayor Aponte had "developed a policy, custom or practice of political discrimination against members of the New Progressive Party." The only evidence submitted in support of those allegations was the affidavit of plaintiff

---

tion in concluding that the plaintiffs waived their objection to the late filing.

**3.** The court did not address the plaintiffs' claim that the failure to recall the plaintiffs was an act of political discrimination. According to the court, this issue was not raised by the parties in their motions for summary judgment. The parties do not dispute this conclusion.

**4.** Mayor Aponte also moved for a summary judgment on the claims against him in his individual capacity. This motion was granted and all claims against Mayor Aponte in his individual capacity were dismissed. In their brief, defendants offer a seven page discussion in support of the court's conclusion. Given that the plaintiffs did not appeal the dismissal of the claim against Mayor Aponte, the defendants' arguments were unnecessary.

Angulo–Alvarez.[5] In the affidavit, Angulo–Alvarez stated that Mayor Aponte is a member of the PDP and that the plaintiffs are known, active members of the NPP. He claimed that of the seventy employees in the Department, most of them were NPP supporters and that this "bothered" the management of the municipality of Carolina. Neither Angulo–Alvarez's affidavit nor any other evidence in the record supports the statements that (1) the majority of Department employees were NPP followers or (2) that, even if true, the Municipality was troubled by a strong NPP presence in the Department. Angulo–Alvarez's statements were speculative assertions with no basis in the record.[6]

Indeed, although the plaintiffs alleged that a majority of the employees at the Department were NPP followers, defendants correctly note that the plaintiffs' own statements belie the accuracy of this statement. The plaintiffs claim—and defendants do not dispute—that there were a total of seventy employees in the Department. In the plaintiffs' motion for reconsideration of the dismissal of their complaint, they listed 29 PDP followers who were relocated to other jobs. Combined with the other six names set forth in additional documentation, at least half of the employees in the Department must have been PDP followers. At the very most, the plaintiffs can claim that the Department was evenly split between PDP and NPP followers. On this evidence, no rational jury could conclude that the decision to privatize the department was politically motivated. Given that the plaintiffs failed to meet their initial burden of presenting a prima facie case of discrimination, the court properly entered summary judgment on the privatization claim.

### III. Motion to Dismiss

██ As the court explained in its final order dismissing the plaintiffs' complaint, the court concluded at the pretrial settlement conference that the plaintiffs could not "proffer ... elementary evidence crucial to a political discrimination case despite the fact that they carry that burden at trial." Concerned with the plaintiffs' ability to meet their burden at trial, the court ordered each plaintiff to answer four interrogatories.[7] In the minutes of the conference, the court explained:

> [T]he only issue remaining in this action is the MUNICIPALITY's liability for having failed to relocate/recall plaintiffs. Accordingly, plaintiffs would have to establish at trial that they were laid off and not relocated/recalled even though: (1) there were employment positions available within the MUNICIPALITY (2) for which they qualified and (3) these positions were filled by PDP followers instead.

5. The plaintiffs never propounded interrogatories or requests for admissions and they never deposed any of the parties involved in this appeal. They never filed requests for production; the only documentation in the record came from defendants' request for production in which they sought the plaintiffs' personnel files.

6. Although the plaintiffs did move to depose Mayor Aponte at the pre-trial conference, the court denied the request. The plaintiffs complain that the court denied their request while it granted a similar request by defendants to depose a critical non-party witness. The plaintiffs, however, fail to note that the requests were not made simultaneously. In denying the request, the court explained in the minutes of the pre-trial conference that "[t]his is the first time that the plaintiffs have made this request." When the plaintiffs moved for reconsideration of the court's ruling, the court denied the motion, again noting that, "[c]ontrary to codefendant's discovery requests disposed [of] at the conference, plaintiffs had made no petition to conduct this discovery prior to **January 20, 1998.**" Although the record does not reveal the specific date of defendants' discovery request, the court was clear that it had been raised prior to the conference, unlike the plaintiffs' request.

7. The court demanded the following offers of proof:

(1) Each position you claim was available at the MUNICIPALITY at the time of your lay-off or subsequently became available but was not offered to you.
(2) Specify the qualifications required for the position(s) listed in response to question No. 1. Indicate if you met those qualifications and if not, specify why not.
(3) For each position identified in response to question No. 1 state the name of the person appointed to fill the position and his/her political affiliation.
(4) List the evidence you have available to establish that political affiliation was a motive for filling the position.

Plaintiffs were not able to identify a single position which they claim was filled by a PDP for which they qualified.

Given the narrow issues which remain outstanding, the imminence of trial date, plaintiffs' burden at trial and in order to avoid the time and expense involved in trial and its preparation, *each* plaintiff shall provide under oath/verification ... answers to [four] questions.

The plaintiffs were warned that "failure to comply shall result in the dismissal of the claim(s) and/or sanctions against counsel personally." In response to the order, the plaintiffs submitted one affidavit, signed by Angulo–Alvarez. Defendants then filed a motion to dismiss for failure to comply with the court's order. The court granted the motion to dismiss on the basis that the plaintiffs' answers to the interrogatories were incomplete—twelve of the thirteen plaintiffs failed to even submit answers and Angulo–Alvarez's answers were incomplete. The court found that Angulo–Alvarez failed to proffer the required information, noting that "there is no justification for plaintiffs to lack this information at this late stage of the proceedings."

■ Federal Rules of Civil Procedure 37(b)(2)(C) [8] and 41(b) [9] give the court the authority to dismiss a complaint for failure to comply with a court order. Rule 37(b)(2)(C) specifically provides for dismissal if a party fails to comply with an order to provide discovery while Rule 41(b) is a more general grant of authority, allowing dismissal for the failure to comply with any order of the court. Although the court did not specify which rule of procedure it relied upon in dismissing the complaint,[10] we review such a decision on either of the above stated grounds for an abuse of discretion. *See Guex v. Allmerica Financial Life Ins. and Annuity Co.*, 146 F.3d 40, 41 (1st Cir.1998)(reviewing dismissal pursuant to Fed.R.Civ.P. 37(b)(2)(C) for abuse of discretion); *HMG Property Investors, Inc. v. Parque Industrial Rio Canas, Inc.*, 847 F.2d 908, 916–917 (1st Cir.1988)(reviewing choice of remedy under Fed.R.Civ.P. 41(b) for abuse of discretion).

At the pretrial settlement conference, the court ordered the plaintiffs to answer four questions due to the apparent dearth of evidence. The plaintiffs were warned by the court at this conference that failure to comply with the court's order could lead to a dismissal of their complaint in its entirety. Nonetheless, twelve of the thirteen plaintiffs made no effort to comply with the order. Angulo–Alvarez, the only plaintiff to submit answers, did so selectively. He set forth those 16 jobs that were available at the time the plaintiffs were laid off. He failed, however, to provide the qualifications necessary to fill each of the positions. Instead, he selectively described the necessary qualifications for certain positions, and then stated that the plaintiffs were qualified to fill those positions. In response to the court's request that he state the name of each person who filled the 16 vacant positions described in response to question one as well as their political affilia-

8. Fed.R.Civ.P. 37(b)(2)(C) provides in relevant part:

> **(b) Failure to Comply With Order.**
> **(2) Sanctions by Court in Which Action is Pending.**
> If a party or an officer, director, or managing agent of a party ... fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof....

9. Fed.R.Civ.P. 41(b) provides in relevant part:
> **(b) Involuntary Dismissal: Effect Thereof.** For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant.

10. It is clear, however, that, contrary to the plaintiffs' contentions, the court did not base its decision to dismiss the complaint on Fed.R.Civ.P. 12(b)(6). Rule 12(b)(6) allows a party to petition the court to dismiss a complaint on the basis that the moving party has failed to state a claim upon which relief may be granted. While the court was concerned with the plaintiffs' ability to meet their burden at trial, as evidenced in the minutes of the pre-trial conference, the ground for the dismissal was the plaintiffs' failure to comply with the court's order.

tion, Angulo–Alvarez only offered the names of eight PDP followers. Finally, Angulo–Alvarez failed entirely to respond to the request for evidence he intended to use to establish that political affiliation was a motive for filling the positions. The plaintiffs' contention that Angulo–Alvarez's answers "complied with the District Courts' [sic] questions propounded to plaintiffs" is without merit.[11]

■ We are similarly unpersuaded by the plaintiffs' protestations that the complaint was improperly dismissed because they were not given an opportunity to oppose defendants' motion. We have stated in this circuit that "[l]ack of a hearing does not offend due process where the plaintiff had ample warning of the consequences of his failure to comply with court orders." *Spiller v. U.S.V. Lab., Inc.*, 842 F.2d 535, 538 (1st Cir.1988)(citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). Nor is it an abuse of discretion to employ the sanction of dismissal without first considering less severe sanctions. "[T]he law is well established in this circuit that where a noncompliant litigant has manifested a disregard for orders of the court and been suitably forewarned of the consequences of

continued intransigence, a trial judge need not first exhaust milder sanctions before resorting to dismissal." *Ruiz v. Alegria*, 896 F.2d 645, 649 (1st Cir.1990)(internal quotation marks and citation omitted). The court clearly warned the plaintiffs that failure to comply with its order that each plaintiff answer the interrogatories could result in a dismissal of their claims.[12] The plaintiffs' disregard of this order and the court's specific warning that dismissal could follow from such noncompliance provided a sufficient basis for the dismissal. We find no abuse of discretion in the district court's action.[13]

**Judgment affirmed.**

---

11. The plaintiffs do not offer any explanation for the failure of each plaintiff to submit answers to the court's interrogatories. Their brief, however, could be read to suggest that they believed the submission of Angulo–Alvarez's affidavit satisfied the court's demands. To the extent this is in fact their position, we reject it. The court was clear that *each* plaintiff was to submit answers to its interrogatories.

12. This was not the first warning issued by the court. In June 1997, in response to defendants' motion to compel the plaintiffs to supplement their answers to interrogatories, the court reprimanded counsel for their inexcusable failure to comply with the discovery request:

It is important to note that this particular discovery was served over one year ago and the *responses are totally inadequate.* The court further finds that the information sought by codefendant should be readily available to plaintiffs not only because they have the burden of proof in this action but most important, because the evidentiary foundations for the discrimination claims should have been available to counsel prior to instituting this action. *See* Rule 11 Fed.R.Civ.P. (Counsel personally subject to sanctions for violations to rule).

Plaintiffs are hereby admonished that failure to comply with the terms of this Order shall result in the imposition of sanctions including but not limited to the dismissal of the complaint.

The plaintiffs did comply with this court order, submitting supplementary answers to the original interrogatories, and the case continued without the imposition of any sanctions.

13. Following the dismissal, the plaintiffs filed a motion for reconsideration. To support their motion to set aside the dismissal, they attached a sworn statement, signed by each of the plaintiffs, which they asserted was responsive to the court's interrogatories. However, the only difference between the sworn statement submitted with the motion for reconsideration and Angulo–Alvarez's sworn statement was that it was signed by each of the thirteen plaintiffs. The substance of the statements was nearly identical; the statement signed by all thirteen plaintiffs was a virtually word for word rendition of Angulo–Alvarez's affidavit that had been filed initially in response to the court's order. Given that interrogatories (2) and (4) propounded by the court unmistakably required individualized responses from the plaintiffs, the court did not err in denying the motion to reconsider.