Vrusho v. Glosser                    CV-98-100-JD  05/19/99

UNITED STATES DISTRICT COURT FOR THE
                       DISTRICT OF NEW HAMPSHIRE


Paul E. Vrusho, et al.

        v.                              Civil No. 98-100-JD

Catherine Glosser, et al.


                              O R D E R

     The plaintiffs, Paul Vrusho, Grand Prix Farms, Inc., and
George and Beverly Vrusho, brought civil rights conspiracy and
state law claims against Northwood (New Hampshire) Police Officer
Catherine Glosser, Northwood Police Chief Michael D'Alessandro,
the Town of Northwood, and other unnamed Northwood police
officers.  The suit arose from the Vrushos' boundary dispute with
their neighbors, the Hathaways, that culminated in the arrest of
Paul Vrusho on misdemeanor charges of removing trees from the
Hathaways' property, removing or altering a boundary marker, and
criminal trespass.  The defendants move for summary judgment
(document no. 33), and the plaintiffs object.

<u>Background</u>[1]

George and Beverly Vrusho bought lake front property on Blakes Hill Road in Northwood, New Hampshire, at an Internal Revenue Service tax foreclosure sale. The property was abutted by property owned by the Hathaways and the Morgans, among others. In February of 1993, the Vrushos received a quitclaim deed from the IRS for the property, described as thirty-five acres, more or less.

Paul Vrusho, the son of George and Beverly, leased the property from his parents for his horse farm, Grand Prix Farm. In September of 1993, the Vrushos hired William Wormell to prepare a site plan of the property in support of their application to the Northwood Planning Board for approval to build horse barns on the property. The site plan showed the property as twenty-eight acres rather than thirty-five acres as indicated by the IRS drawing of the property.

---

[1]The background information is taken from the parties' factual statements. Only properly supported facts may be considered in support of or in opposition to a motion for summary judgment. Fed. R. Civ. P. 56(c) and (e); LR 7.2(b). Much of the plaintiffs' factual background is not supported with citations to the record, and the effort in the plaintiffs' memorandum to incorporate by reference the facts stated in the complaint is not appropriate in opposition to summary judgment. Unsupported factual allegations and argument of counsel do not establish disputed facts, Fed. R. Civ. P. 56(e), and properly supported facts in the defendants' statement that are not properly opposed by the plaintiffs are deemed admitted. LR 7.2(b)(2).

2

In May of 1995, Paul Vrusho hired a contractor to clear brush and stumps on a seven-acre wooded parcel of land that bordered the Vrusho's driveway going down to the lake.  Jeanne Hathaway, the daughter of Harriet Hathaway who owned the property abutting the Vrushos' land, told Paul Vrusho that the work being done was on her mother's property.  Paul Vrusho disagreed saying that the property belonged to his parents and continued the project.  The Hathaways complained to the Northwood police about the Vrushos' clearing project on the disputed land and reported that a stone boundary wall had been removed along with trees and other growth.

Northwood police officer Catherine Glosser (now Catherine Hillner) and Chief Michael D'Alessandro interviewed Harriet Hathaway about the dispute.  From the Hathaways' property the officers saw a bulldozer clearing and grading the ground between the few trees still remaining on the disputed property.  Glosser and D'Alessandro talked to the bulldozer operator and then talked to Paul Vrusho.  Vrusho said that the property belonged to his parents and that, in any case, that Jeanne Hathaway had given him permission to clean up the property.

Glosser investigated the disputed boundary between the Vrushos and the Hathaways.  She contacted the town, the IRS, and several people familiar with the property.  Glosser's

3

investigation was reviewed by Assistant Rockingham County Attorney Michael DiCroce. Glosser prepared an application, supported by her affidavit, for an arrest warrant on a misdemeanor charge of removing a stone boundary marker. DiCroce signed complaints against Paul Vrusho on misdemeanor charges of removing wood, criminal trespass, and removing a stone boundary marker. Vrusho was notified of the warrant for his arrest and turned himself in to the Northwood police on June 7, 1995.

In July of 1995, the Auburn District Court dismissed the misdemeanor charges when the state failed to appear to prosecute, but then vacated the dismissal. Upon Vrusho's motion, in September of 1995, the court vacated the order that reinstated the misdemeanor charges. Paul Vrusho's attorney notified Chief D'Alessandro in a letter dated August 1, 1995, that Vrusho intended to file suit against him, Officer Glosser, and the police department based on the charges brought against him.

The Hathaways filed a quiet title action against the Vrushos in August of 1995 seeking to resolve the boundary dispute. Eventually, the parties came to agree that the Hathaways held title to the disputed property, but the Vrushos argued that they owned the property by adverse possession. The court granted summary judgment in the Hathaways' favor on the issue of ownership of the property on April 24, 1998.

4

In September of 1995, Assistant County Attorney DiCroce presented the evidence to a grand jury from the Northwood police investigation pertaining to Paul Vrusho's activities on the disputed land. Vrusho was indicted on felony charges of theft of trees, theft of a stone boundary marker, and destruction of a stone boundary, and a misdemeanor information charging removal of a stone wall. The felony charges were dismissed by nolle prosequi on July 24, 1997, based on new evidence obtained from the Vrushos' attorney, Stephen Ells, and surveyor, William Wormell.

The Vrushos filed the present suit in February of 1998 against Catherine Glosser, Michael D'Alessandro, unnamed police officers, the town of Northwood, the Hathaways, and the Hathaway's attorney Carolyn Baldwin. All claims against the Hathaways and Carolyn Baldwin were dismissed in May of 1998. The remaining defendants move for summary judgment on all claims.

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must first demonstrate the absence of a

5

genuine issue of material fact in the record. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The record evidence is taken in the light most favorable to the nonmoving party. <u>Zambrana-Marrero v. Suarez-Cruz</u>, No. 98-1601, 1999 WL 223066, *2 (1st Cir. April 21, 1999). All reasonable inferences and credibility issues are resolved in favor of the nonmoving party. <u>Barreto-Rivera v. Medina-Vargas</u>, 168 F.3d 42, 45 (1st Cir. 1999).

"An issue is only 'genuine' if there is sufficient evidence to permit a reasonable jury to resolve the point in the nonmoving party's favor, while a fact is only 'material' if it has the potential to affect the outcome of the suit under the applicable law." <u>Bourque v. F.D.I.C.</u>, 42 F.3d 704, 707-08 (1st Cir. 1994) (quotations omitted). Summary judgment will not be granted as long as a reasonable jury could return a verdict in favor of the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).


<u>Discussion</u>

The plaintiffs allege in counts one and two that the defendants conspired to deprive them of their property rights in violation of due process under both the federal and state constitutions. Paul Vrusho alleges state law claims of false arrest and malicious prosecution in counts three and four, and

6

all of the plaintiffs allege a state law claim of negligent infliction of emotional distress in count six. The defendants move for summary judgment on grounds that the plaintiffs cannot prove their claims.

A. The Conspiracy Claims

The plaintiffs allege that the defendants conspired to deprive them of their property rights in violation of due process as guaranteed by the United States and State of New Hampshire Constitutions. In support of summary judgment, the defendants point out that the plaintiffs did not indicate the legal basis of their conspiracy claims, and the defendants assume that the plaintiffs must have intended to rely on 42 U.S.C.A. § 1985(3). The defendants argue that the plaintiffs cannot show the discriminatory intent required for a claim under § 1985(3). See, e.g., Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996); Andrade v. Jamestown Housing Auth., 82 F.3d 1179, 1192 (1st Cir. 1996); Libertad v. Welch, 53 F.3d 428, 447 (1st Cir. 1995). In addition, the defendants say that because the New Hampshire state courts determined that the disputed land belonged to the Hathaways, not the Vrushos, there is no factual basis for the plaintiffs' claims under the state or federal constitutions that they were deprived of property rights in violation of due

7

process.

In response, the plaintiffs withdraw their claims under 42 U.S.C.A. § 1985. They also assert, however, that because the defendants did not address the conspiracy claims under 42 U.S.C.A. § 1983, their motion should be construed as seeking only partial summary judgment.

The plaintiffs' argument is perplexing at best. The complaint is not a picture of clarity. The plaintiffs apparently brought their conspiracy claims pursuant to 42 U.S.C.A. § 1985, and have withdrawn them. To the extent the plaintiffs are now suggesting that they also intended to bring conspiracy claims for deprivation of property rights under § 1983 in count one,[2] they did not allege such a claim, nor have they supported their new theory with record facts in response to the defendants' motion. The plaintiffs have not shown a deprivation of a constitutionally protected property right in response to the defendants' evidence that the disputed property did not belong to them. See Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988) (elements of a conspiracy claim under § 1983); see also Brennan v. Hendrigan, 888 F.2d 189, 195 (1st Cir. 1989). The plaintiffs have not objected to summary judgment as to their conspiracy claim brought

_____

[2]Only count one alleges a conspiracy claim of deprivation of a federal constitutional right.

8

under the New Hampshire constitution. Therefore, based on the record presented, the defendants are entitled to judgment on the conspiracy claims, counts one and two.

B. <u>False Arrest and Malicious Prosecution</u>

Paul Vrusho's claims alleging false arrest and malicious prosecution are explicitly pled as state law claims although he also refers to violations of his federal due process rights. The complaint makes no mention of 42 U.S.C.A. § 1983 or of a federal civil rights cause of action. Although the defendants say that the complaint is not clear, they nevertheless address the false arrest and malicious prosecution claims in the context of both § 1983 and state common law. In the objection to summary judgment, the plaintiff invokes § 1983 as if it had been pled, without further identifying the source of the constitutional rights allegedly actionable under § 1983, and also argue state law false arrest and malicious prosecution claims.

In general, allegations of false arrest and malicious prosecution do not state claims under the Fourteenth Amendment for violation of substantive due process or a procedural due process when state causes of action are available.[3] <u>See</u> <u>Albright</u>

_____

[3]Although a malicious prosecution claim that police withheld exculpatory evidence from the prosecution is actionable as a

v. Oliver, 510 U.S. 266, 271 (1994) (plurality opinion); Meehan v. Plymouth, 167 F.3d 85, 88 (1st Cir. 1999); Reid v. New Hampshire, 56 F.3d 332, 341 (1st Cir. 1995). The plaintiff has not alleged or argued any other constitutional basis for his claims. Cf. Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 3 (1st Cir. 1995) (discussing false arrest and malicious prosecution as Fourth Amendment violations); Mutter v. Salem, 945 F. Supp. 402, 408 (D.N.H. 1996) (same). Therefore, to the extent Paul Vrusho intended to bring § 1983 claims based on violations of his due process rights in connection with his arrest and prosecution, the defendants are entitled to summary judgment.

Under New Hampshire law, claims of false arrest and malicious prosecution are both defeated if probable cause existed

---

procedural due process claim, Vrusho has not alleged such a claim. See Reid v. New Hampshire, 56 F.3d 332, 341 (1st Cir. 1995). Indeed, in the state criminal proceedings against Paul Vrusho, the court denied Vrusho's motion to dismiss, alleging that the state had failed to present exculpatory evidence to the grand jury, finding that the credibility of Vrusho's witnesses was "in issue" and the state had not abused its discretion in the evidence presented. It appears from the court's order that Vrusho's counsel notified the prosecutor before the grand jury proceeding of alleged omissions or false statements in the Northwood police investigation and Glosser's affidavit. State v. Paul Vrusho, No. 95-S-1449 - 1452, slip op. at 3-6 (Rockingham Cty. Sup. Ct. May 8, 1996).

to support the challenged action.[4]  See Hartgers v. Plaistow, 141 N.H. 253, 255 (1996); ERG, Inc. v. Barnes, 137 N.H. 186, 190 (1993); Hickox v. J.B. Morin Agency, Inc., 110 N.H. 438, 442 (1970).  "Probable cause to arrest exists when the arresting officer has sufficient trustworthy information to warrant a reasonable person to believe that the arrestee has committed a crime."  State v. Vandebogart, 139 N.H. 145, 163 (1994).

Assistant County Attorney DiCroce, not the defendants, signed the complaints and initiated criminal proceedings against Vrusho.[5]  Glosser and D'Alessandro conducted the investigation of the Hathaways' complaint against Vrusho, and Glosser informed DiCroce about the investigation.  Glosser sought an arrest warrant based on her affidavit as to the boundary removal offense.[6]

---

[4]Similarly, § 1983 claims based on the Fourth Amendment alleging false arrest or malicious prosecution require an absence of probable cause.  See Calero-Colon, 68 F.3d at 3-4; see also Meehan, 167 F.3d at 89-92 (discussing § 1983 claims of malicious prosecution based on the circumstances of an arrest and subsequent prosecution); Abraham v. Nagle, 116 F.3d 11, 13 (1st Cir. 1997) (absence of probable cause necessary for federal and state claims based on false arrest).

[5]DiCroce is not a party in this action.  See Belcher v. Paine, 136 N.H. 137, 148 (1992) (describing prosecutorial immunity under state law); see also Burns v. Reed, 500 U.S. 478, 492 (1991) (same under federal law).

[6]A complaining witness or the source of an allegedly false affidavit in support of an arrest warrant, however, may be liable

1. <u>Probable cause to arrest on the misdemeanor charges.</u>

The three complaints charging Vrusho with misdemeanors in violation of New Hampshire Revised Statutes Annotated § (RSA) 539:1[7] (removal of a forest product), RSA 472:6 (removal of boundary markers), and RSA 635:2 and 626:8 (criminal trespass and criminal liability for the conduct of another). To commit the misdemeanor of removing or altering boundary markers under RSA 472:6, a person must purposely deface, alter the location, or remove a stone wall or monument that he knows is a boundary marker. To commit the misdemeanor of criminal trespass under RSA

_____

under theories of false arrest or malicious prosecution. <u>See,</u> <u>e.g.</u> <u>Kalina v. Fletcher</u>, 118 S. Ct. 502, 509-510 (1997); <u>Murphy</u> <u>v. Lynn</u>, 118 F.3d 938, 944 (2d Cir. 1997); <u>McMillian v. Johnson</u>, 88 F.3d 1554, 1566-67 (11th Cir. 1996); <u>Reid</u>, 56 F.3d at 341.

[7]The plaintiff contends that RSA 539:1 provides only a civil remedy and not a criminal penalty. The statute was amended in 1977 to provide that violation of the statute was a misdemeanor. <u>See</u> <u>Peaslee v. Koenig</u>, 122 N.H. 828, 829 (1982). The section was amended again in 1992, removing the remedy and penalty language from 539:1, but providing a civil penalty "[i]n addition to any other civil or criminal penalty allowed by law . . . ." RSA 539:3-a. The purpose of the 1992 amendment was stated as: "The removal of references to criminal penalties in section 3 of this act [which repealed and reenacted RSA 539:3-a] is not intended to decriminalize such violations, but to encourage the prosecution of the same conduct under provisions of the criminal code." <u>Id.</u> Both RSA 539:1 and 539:3-a were repealed in 1995 effective January 1, 1996. As chapter 539 is titled "Wilful Trespass," the appropriate corresponding provision of the criminal code would likely be criminal trespass, RSA 635:2.

635:2, a person must enter or remain in a place, "knowing that he is not licensed or privileged to do so," under particular circumstances including when he has been ordered to leave or not to enter, and under RSA 626:8, a person is guilty of an offense by another, for whom he is legally accountable. Although knowledge and intentional conduct in the context of boundary disputes may be difficult to prove by direct evidence, continued cutting of growth and breaching of stone walls after notice of the disputed boundary are evidence that support a reasonable inference of the actor's knowledge and intentional conduct. See Hynes v. Whitehouse, 120 N.H. 417, 420 (1980). Once probable cause for an arrest is determined, the police have no further duty to investigate. See Franco-de Jerez v. Burgos, 876 F.2d 1038, 1042 (1st Cir. 1989); see also White v. Marblehead, 989 F. Supp. 345, 349 (D. Mass. 1997).

Vrusho says that probable cause was lacking as to the intent elements of the charged misdemeanors, specifically that he knew that he was clearing someone else's land or that he knew he was moving a boundary marker. When Glosser provided information about Paul Vrusho's activities to DiCroce and completed her affidavit and applied for the arrest warrant, she knew that the Hathaways had complained to the police on May 21, 1995, saying that Vrusho was damaging their property, cutting trees, and that

13

a stone boundary wall between the properties had been removed as part of the clearing process.  Jeanne Hathaway showed Glosser a copy of a survey dated February of 1976 showing the boundary with the property now owned by the Vrushos.  On May 26, 1995, Harriet Hathaway filed a written complaint with the police in which she identified the location of her property and said that she and her children had discovered that their land abutting the Vrushos' property had been cleared, the boundary had been removed, and a road cut through without their knowledge or permission and that Paul Vrusho told them that he was responsible.  Mrs. Hathaway said that Paul Vrusho had previously asked about buying the Hathaways' fields, and was turned down, and "may have asked" if they would sell a portion of their land abutting the Vrusho property.

Jeanne Hathaway also provided the police with a written description of the boundary dispute.  Jeanne identified the land in question and the stone wall boundary.  She explained that she and other members of the family had seen the stone wall boundary intact and the forest undisturbed the previous summer and fall.  She described the cleared condition of the property when it was first discovered on May 13, 1995.  Jeanne said that on the same day she left a message for Paul Vrusho that he was clearing property that belonged to the Hathaways.  When Vrusho called

14

Jeanne later on, he said that the land he was clearing belonged to his family and described a boundary with several turns to accommodate the cleared area. He also said that he was interested in buying or leasing the disputed property, which Jeanne declined.

Jeanne said that the family returned to the property the next weekend to determine and record the damage to their property and to show Vrusho maps of the property boundary. They discovered that about seven acres had been cleared, and they located the remains of the stone wall boundary near the lake. When the Hathaways confronted Paul Vrusho with the town tax map showing a straight boundary rather than the turns Vrusho had suggested, Vrusho argued that the map was not accurate. He said that he had had a survey done of his parents' property and would get a copy for them. The Hathaways told him to stop all work on their property. They contacted the Northwood police the next day, and then spoke with Chief D'Alessandro on Monday, May 22, 1995.

Jeanne reported that the next Wednesday, May 24, Paul Vrusho talked with her mother, Harriet Hathaway, about the dispute and showed Harriet an IRS map of the property, which indicated a straight boundary between the properties. Vrusho explained that he had resurveyed the boundary using a different map. Vrusho

15

admitted that he had removed the stone wall and cut the trees and said that if he had made a mistake, he would have to absorb the loss. Later on Wednesday, Harriet found a bulldozer operating on the disputed property, and the operator told her that he was working for Paul Vrusho and did not know that he was on someone else's property.

Glosser began her investigation of the Hathaways' complaints on May 22. She obtained a copy of a site plan submitted by the Vrushos to the Northwood Planning Board in 1993, reviewed a copy of the minutes of the planning board meeting pertaining to the Vrushos' property, and talked with the chairperson of the planning board. Glosser learned that the board had questioned the accuracy of the boundary lines provided by the Vrushos' plan.

On May 24, Glosser and D'Alessandro talked with Harriet Hathaway who told them that Vrusho had just asked if she would be willing to lease or sell the property.[8] While there, they saw a bulldozer leveling land between the few trees remaining on the

_____

[8]The plaintiffs object to the defendants' reference in their memorandum in support of summary judgment to letters from Paul Vrusho offering to buy the disputed property. The single letter submitted in the record and the reports of the contents of the letters indicate that Paul Vrusho was asking to lease or buy fields, not the disputed wooded area. However, both Harriet and Jeanne told the police that Paul also asked them about buying or leasing the disputed property, separate from the letters about the fields.

16

property, and the operator told them that he worked for Paul Vrusho. Glosser and D'Alessandro talked to Paul in his barn. Vrusho told them he knew why they were there, and they informed him of the Hathaways' complaints against him. Vrusho responded that Jeanne Hathaway had told him that he could clean up the property as long as he did not use it. He also said that his parents had an IRS map of the property that he would show the police within the next week.

Glosser researched both the Hathaway and Vrusho properties at the Rockingham County Registry of Deeds. She attempted to contact William Wormell who had done the site plan of the property for the Vrushos. She again met with the Hathaways and their attorney and asked about Vrusho's statement that Jeanne Hathaway had given him permission to clear the property. While Jeanne indicated that she might have been vague, Stephen Hathaway said that he was there and made it clear that Vrusho was not to continue clearing the land.

Glosser met with Dan Schroth who had done some stone work for Paul Vrusho and showed him a videotape of the disputed property. Schroth told Glosser that he built a stone wall at the entrance to the Vrushos' property and had taken stones from the area where the stone boundary wall had been located. Schroth confirmed that two years before his work, a wall had been in the

17

location claimed by the Hathaways.

Glosser contacted people at the IRS about the Vrushos' survey map of the property. She was told that the IRS does not provide survey maps and that a survey map was not given to the Vrushos.

Glosser talked to Ron Cote of Qualitus Land Development Company who was doing the clearing work for Paul Vrusho. She says that Cote told her that he and his employees had removed the stone wall at the direction of Paul Vrusho and that Vrusho had told them it was not a boundary wall. Since Vrusho's arrest, Cote and his employees have testified and stated in affidavits that they never told Glosser that they had taken down a stone wall or that Paul Vrusho told them to remove a stone wall. Cote acknowledges in his affidavit that "at one time long ago" there may have been a stone wall along the driveway (as the Hathaways claimed).

The circumstances known to Glosser on June 5, 1995, when she provided her investigative information to DiCroce and applied for an arrest warrant for Vrusho would suggest to a reasonable person that Vrusho continued his activities on the property after he was informed that the boundary and his right to be on the property were disputed. His reported attempt to describe a circuitous boundary that contradicted all known plans of the boundary and

18

his reported oral offers to buy or lease the disputed property permit a reasonable inference that he at least had doubts about his right to it.[9]  In addition, he continued his activities after the Hathaways notified him that he was operating on their property and complained to the police.  Therefore, Glosser's information would lead a reasonable person to believe that Vrusho knew he was operating on the Hathaways' property, or at least on disputed property, without a right or privilege to do so, and that he continued the activities on the property after being told to stop.  Therefore, the record supports a probable cause determination in support of the criminal trespass charge in violation of RSA 635:2.

    2.  <u>Probable cause to arrest based on the affidavit.</u>

Vrusho challenges the sufficiency of Glosser's affidavit to show probable cause that he committed the misdemeanor of removing a boundary marker.  In particular, Vrusho contends that false

---

[9]The plaintiffs fault Glosser for not interviewing George and Beverly Vrusho about their understanding of the disputed property, but they do not make any showing of what material information Glosser would have learned.  The plaintiffs do not include affidavits by either George or Beverly Vrusho as to their knowledge or understanding of who owned the disputed property or what, if any, information they gave Paul.  The plaintiffs cannot rely on unsupported inferences and speculation to avoid summary judgment.  <u>See</u> <u>Angulo-Alvarez v. Aponte De La Torre</u>, 170 F.3d 246, 249 (1st Cir. 1999).

statements and omissions in the affidavit undermine probable cause for his arrest on the charge of removing the boundary marker. Since the facts show that probable cause existed to arrest Vrusho on the criminal trespassing charge, it is not clear whether it is necessary to examine probable cause on the separate, but related, misdemeanor of removing a boundary marker. Even if Vrusho could show that probable cause did not exist to arrest him for removing the boundary marker, his arrest would have been valid based on the criminal trespass charge, which would seem to preclude his false arrest and malicious prosecution claims. <u>Cf.</u> <u>Santiago v. Fenton</u>, 891 F.2d 373, 383 (1st Cir. 1989) (rejecting probable cause based on separate but uncharged and pretextual basis for arrest). Nevertheless, since the parties focus on the issue of probable cause in Glosser's affidavit, it will also be considered.

Under New Hampshire law, an affidavit submitted in support of a warrant is insufficient if it includes material misrepresentations or omissions made intentionally or recklessly by the affiant. <u>State v. Jaroma</u>, 137 N.H. 143, 147 (1993); <u>State v. Wilkinson</u>, 136 N.H. 170, 174 (1992). First, as under the federal <u>Franks</u> standard,[10] one challenging a facially valid

_____

[10]<u>Franks v. Delaware</u>, 438 U.S. 154 (1978). The federal analysis of probable cause based on an allegedly defective

20

affidavit must show that any misstatements or omissions were necessary to the probable cause determination so that probable cause would not have existed if the misstatements were omitted or if the omitted information were added.  Id.; State v. Valenzuela, 130 N.H. 175, 190-91 (1987).  If materiality is established, then the challenger must show that the material misrepresentations or omissions were made recklessly or intentionally.  Id.

Vrusho contends that Glosser failed to say in her affidavit that the Vrushos' property contained thirty-five acres.  The acreage issue, however, is not sufficiently explained to determine its materiality.  The plaintiffs have not shown that the number of acres the Vrushos acquired in the IRS sale, or thought they acquired, would affect their understanding of the location of the boundary abutting the Hathaways' property.  The lack of acreage information in the affidavit does not affect probable cause for the offenses charged.

Vrusho contends that Glosser falsely said in her affidavit he had a partial survey done of the property for the town planning board, showing the stonewall boundary between the properties, when in fact only a site plan, not a survey, was

---

affidavit is substantially similar.  See, e.g., Aponte Matos v. Toledo Davila, 135 F.3d 182, 187 (1st Cir. 1998);  Lallemand v. University of R.I., 9 F.3d 214, 216-17 (1st Cir. 1993).

submitted.  Despite the potential materiality of the difference between a survey and a site plan in some circumstances, here the issue is whether Vrusho knew where the boundary was or had any basis to believe the boundary was circuitous as he argued to the Hathaways.  The fact that his own plan,[11] whether it was a site plan or a survey, supported the Hathaways' version of the boundary as a straight line marked by a stone wall boundary, is significant for probable cause and the relative weight to be afforded to each type of map is not material in this context.

Vrusho also argues that Glosser's statement that he had a "partial survey done of his property" (emphasis added) falsely suggests that he owned the property.  It is unclear what significance Vrusho finds in the suggestion of ownership.  In any case, Glosser clearly states in her affidavit that Paul's parents, George and Beverly Vrusho, bought the lot and that the lot is the location of Paul's residence and business.  The ownership suggestion is therefore not material.  It is also undisputed that Paul Vrusho, not his parents, engaged in all of

---

[11]Although William Wormell now says that he never showed the plan to Vrusho, Vrusho's actual knowledge is not material here since he is reported to have discussed the plan with the Hathaways and seemed to rely on it, as if he had seen it, and there is no indication that Glosser should have known otherwise. Based on the circumstances reported to Glosser, she could reasonably have inferred that Vrusho was familiar with the site plan.

22

the challenged activities on the Hathaways' property.

Glosser said in her affidavit that Ron Cote told her that Vrusho had instructed him to remove the stone wall but also told him that the stone wall was not the boundary wall.  She says that Cote told her he did remove the wall, as instructed.  Cote says in his affidavit that neither he nor his men moved rocks from a rock pile or a stone wall, that he does not recall seeing a stone wall where they worked, and that he never told the police that he had moved the wall.  He does say that he recalls there may have been a stonewall in that location a long time ago.  Since the question of moving the wall is material to the misdemeanor charge, it must be determined if probable cause would exist based on the affidavit without the challenged statement.

Even without the purported statement from Cote, the affidavit includes sufficient information about Vrusho's removal of the wall.  The affidavit describes the Hathaways' complaint about removal of the wall, the "survey" showing the stone wall boundary, and statements from Dan Schroth who confirmed the existence of the boundary wall, said he had removed stones from it for Vrusho a year before, and that when he returned this year the boundary wall had been removed entirely.  In context, Cote's disputed statement provided information about who exactly removed the wall but did not add to the probable cause to believe that

23

Paul Vrusho knew it was a boundary wall when it was removed.

A probable cause determination is based on "an objective standard designed to measure the probability or likelihood of criminal activity based upon a given set of facts and circumstances." State v. Ball, 124 N.H. 226, 235 (1983) (quotation omitted). Probable cause depends on reasonable probabilities not evidence sufficient to convict or even to make a prima facie case. Jaroma, 137 N.H. at 567. The police are not expected to have any greater understanding of the circumstances relevant to probable cause than any "person of reasonable prudence and caution." Hartgers, 141 N.H. at 256.

Without the Cote statements, the affidavit still tends to show that a boundary wall existed between the properties and that Paul Vrusho had it removed knowing that it was a boundary wall. Accordingly, the Cote statements would not undermine probable cause and are not material.

Since the plaintiffs have not demonstrated any disputed material facts as to the existence of probable cause for Paul Vrusho's arrest, they have not shown a trialworthy issue on the claims of false arrest and malicious prosecution. For that reason, the defendants are entitled to summary judgment on those claims.

24

C.  Negligent Infliction of Emotional Distress

To prove negligent infliction of emotional distress claim under New Hampshire law, a plaintiff must show physical injury that resulted from emotional distress caused by the defendant's negligence.  Thorpe v. State, 133 N.H. 299, 303 (1990); accord Morancy v. Morancy, 134 N.H. 493, 495 (1991).  The defendants say that the plaintiffs cannot show that any negligence by the defendants caused their injuries since probable cause existed for Paul Vrusho's arrest and prosecution.  In response, the plaintiffs say only that the defendants have not made the necessary showing for summary judgment and incorporate the complaint by reference.

The plaintiffs are mistaken about the relative burdens in moving and opposing summary judgment.  Once the moving party demonstrates undisputed facts in support of summary judgment, the burden is on the nonmovant to show by properly supported facts that a trialworthy issue exists.  See, e.g., DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997).  Based on the record, the plaintiffs have not shown a factual issue as to any negligence by the defendants leading to their emotional distress. Accordingly, the defendants are entitled to summary judgment on plaintiffs' negligent infliction of emotional distress claim.

25

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (document no. 33) is granted.  The clerk of court is directed to enter judgment accordingly and to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

May 19, 1999

cc:  Paul W. Hodes, Esquire
     William G. Scott, Esquire